William K. McMAHON, Petitioner–Appellee,

v.

Gary HODGES, Warden, Gowanda Correctional Facility, and the Attorney General of the State of New York, Respondent–Appellant.

No. 02–2666.

United States Court of Appeals, Second Circuit.

Argued: April 8, 2004.

Decided: Aug. 31, 2004.

William A. Gerard, Palisades, NY, for Petitioner–Appellee.

Tina Guccione, District Attorney's Office Rockland County (Michael E. Bongiorno, District Attorney, Ellen O'Hara Woods, Ann C. Sullivan, Senior Assistant District Attorneys, of counsel), New City, NY, for Respondent–Appellant.

David A. Lewis, The Legal Aid Society Federal Defender Division Appeals Bureau, New York, NY, Amicus Curiae.*

Before: FEINBERG and SACK, Circuit Judges, WEXLER, District

* Mr. Gerard declined to submit a brief in McMahon's behalf. Mr. Lewis and the Legal Aid Society therefore, at our request, ably submitted a brief and argued, as *amicus curi-* *ae,* in support of our affirming Judge Chin's judgment. We are grateful to them for so doing.

Judge.[1]

SACK, Circuit Judge.

The State of New York appeals from a judgment of the United States District Court for the Southern District of New York (Denny Chin, *Judge*) granting the petitioner-appellee William McMahon's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court concluded that although the state trial judge did not err in declining to recuse himself from presiding over McMahon's trial, he did violate established federal law, as determined by the Supreme Court of the United States, by conditioning the transfer of McMahon's case at his request to another judge on McMahon's waiver of his right to trial by jury. *McMahon v. Hodges,* 225 F.Supp.2d 357, 359 (S.D.N.Y. 2002). We agree with the district court that the original trial judge was not required to recuse himself but disagree with the district court's conclusion that McMahon's waiver of his right to a jury trial was void. McMahon waived that right in the course of accepting the original trial judge's offer to transfer McMahon's case to another judge for a bench trial. The offer to McMahon of the option of a bench trial before another judge did not coerce McMahon into waiving his right to trial by jury. Because McMahon's waiver was voluntary, the application for a writ of habeas corpus should have been denied.

**BACKGROUND**

The facts relevant to this appeal are set forth in some detail by the district court in its published opinion. *McMahon,* 225 F.Supp.2d at 359–64. We rehearse them here only insofar as we think it necessary to explain our resolution of this appeal.

On October 6, 1995, McMahon and his brother-in-law Ronald Hall were charged in New York State County Court, Rockland County, with kidnapping in the second degree, unlawful imprisonment in the first degree, attempted rape in the first degree, and assault in the second degree. The charges arose out of allegations that they had assaulted a woman who was renting a room in the McMahon family home, where both McMahon and Hall were living at the time. The prosecutions of the two were severed for trial.

Then–Orange County Court Judge Jeffrey G. Berry presided over Hall's trial first. A jury found Hall guilty of charges of kidnapping in the second degree, unlawful imprisonment in the first degree, and assault in the second degree. He was acquitted of attempted rape in the first degree.

Subsequently, on the day McMahon's trial was scheduled to begin before Judge Berry, the judge held an *ex parte* conference with defense counsel to review the evidence that the defense wanted to offer to impeach the credibility of the victim. Judge Berry indicated that all of the proffered evidence would likely be held inadmissible. Judge Berry then convened a preliminary conference with the prosecution and the defense during which the judge discussed, on the record, his view of the case. He explained some of the benefits he thought McMahon would receive if he accepted a plea agreement rather than go to trial. He characterized the state's plea offer as "very, very fair." Prelim. Conf., June 11, 1996, at 5. He also said that he had read McMahon's grand jury testimony and thought that McMahon had ad-

1. Hon. Leonard D. Wexler, of the United States District Court for the Eastern District of New York, sitting by designation.

mitted to imprisoning the victim unlawfully.

As Judge Berry made these comments, McMahon's counsel became concerned that the judge had decided that McMahon was guilty of the charges against him. Counsel asked Judge Berry to "keep an open mind." *Id.* at 11. The judge responded that he had "sat through the trial of this case already [i.e., the related charges against Hall, and had] heard the evidence in this case already." *Id.* He noted that McMahon's grand jury testimony was "extremely inculpating to the degree that he inculpates himself for the unlawful imprisonment first degree." *Id.* at 12. After defense counsel protested, the judge continued, "From what I can see from the facts of this case, [ ] your client—having sat through the trial of the co-defendant— that the People have the ability to prove him guilty beyond a reasonable doubt." *Id.* at 13. He nonetheless assured counsel that, "[a]s a judge, [he would be] totally fair and impartial." *Id.* At the end of this colloquy, McMahon's counsel asked Judge Berry to recuse himself. Judge Berry declined to do so.

Later that day, in open court, Judge Berry returned to the question of his recusal and his impartiality. He said:

> Well, you know, I'm not the trier of fact in this case. I am the judge who will moderate and produce a fair and impartial trial. Now, if, in fact, you wanted to have a non-jury trial, I would—could arrange to have a judge here to try the case non-jury if you felt that that right was being impeded at this time.
>
> Do you feel that that's being impeded? Is there a desire for a non-jury trial?

*Sandoval* Hearing,[2] June 11, 1996, at 32–33.

After consulting with McMahon, McMahon's counsel accepted Judge Berry's offer of a transfer to another judge for a nonjury trial. The case was then transferred to County Court Judge Robert R. Meehan.

When the parties appeared before Judge Meehan, he said, "I understand there's an application by the defense in this case and, for that reason, the case has been approved by the presiding judge ... to be transferred to me." Waiver of Jury Trial Proceedings, June 11, 1996, at 40. McMahon's counsel then made an application to waive trial by jury. Judge Meehan explained to McMahon and his counsel that McMahon had a right to a trial by jury and discussed the consequences of waiving that right. Judge Meehan asked McMahon if he "really want[ed] to ... waive [his] constitutional right to a jury trial." *Id.* at 41. McMahon answered in the affirmative. McMahon's lawyer reviewed the court-supplied document incorporating the waiver with his client. McMahon executed the waiver, which Judge Meehan then read aloud.

Pursuant to the waiver, the case was then tried to Judge Meehan without a jury. He found McMahon guilty of kidnapping in the second degree, attempted rape in the first degree, and assault in the second degree.

McMahon appealed his conviction to the Appellate Division, Second Department, on several grounds, including that he had been denied his right to trial by jury. The Appellate Division, although modifying the judgment by reversing the conviction of kidnapping in the second degree, affirmed on all other grounds. *People v. McMahon,*

---

**2.** "In New York state courts a defendant may request a preliminary hearing, known as a *Sandoval* hearing, to determine whether, if he elects to testify, his prior criminal record may be used to impeach his credibility. *People v. Sandoval,* 34 N.Y.2d 371, 314 N.E.2d 413, 357 N.Y.S.2d 849 (1974)." *Norde v. Keane,* 294 F.3d 401, 408 n. 1 (2d Cir.2002).

248 A.D.2d 642, 643, 669 N.Y.S.2d 951, 951 (2d Dep't 1998). Leave to appeal to the New York Court of Appeals was denied. *People v. McMahon,* 92 N.Y.2d 928, 680 N.Y.S.2d 469, 703 N.E.2d 281 (1998) (Wesley, J.).

On September 29, 1999, McMahon filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Southern District of New York. He argued, first, that his due process rights had been violated because the trial judge was biased, and, second, that he had been denied his right to a jury trial under the Sixth Amendment to the United States Constitution as applied to New York State through the Fourteenth Amendment because the trial judge had impermissibly conditioned his recusal from McMahon's case on McMahon's waiver of that right. The district court concluded that McMahon's first argument had no merit, noting that "the state court system permits a judge to participate in [plea] negotiations," *McMahon,* 225 F.Supp.2d at 369, and that, according to the United States Supreme Court, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible," *id.* (quoting *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)) (internal quotation marks omitted). Because New York State law permits a judge to participate in plea negotiations and the trial judge had not displayed a "deep-seated favoritism or antagonism that would make fair judgment impossible," *Liteky,* 510 U.S. at 555, 114 S.Ct. 1147, there was neither a state-law

nor a constitutional basis for requiring him to recuse himself.

But the district court agreed with McMahon's second argument. The court concluded that the state trial judge had violated the Sixth Amendment by conditioning McMahon's transfer of the case to another judge on McMahon's waiver of his right to a jury trial. *Id.* at 371. Noting that the right to a trial by jury for serious criminal offenses is "fundamental," *id.,* the district court concluded that McMahon gave up that right "under undue pressure," *id.* at 373, and "received no benefit in return," *id.* at 374. The district court therefore granted McMahon's application for a writ of habeas corpus.

The State appeals.

## DISCUSSION

### I. Standard of Review

We review a district court's decision to grant a writ of habeas corpus *de novo.* *Lurie v. Wittner,* 228 F.3d 113, 121 (2d Cir.2000), *cert. denied,* 532 U.S. 943, 121 S.Ct. 1404, 149 L.Ed.2d 347 (2001).

### II. Review Under AEDPA

Under the Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996), a federal court may grant a petition for habeas corpus notwithstanding a contrary state court adjudication on the merits [3] if that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

---

**3.** Neither party argues, nor do we find any basis for concluding, that the decision of the

Appellate Division was anything other than an adjudication on the merits.

presented in the State court proceeding," *id.* § 2254(d)(2).[4] The United States Supreme Court has read the phrase "contrary to ... clearly established Federal law, as determined by the Supreme Court," to require that the state court (1) have "applie[d] a rule that contradicts the governing law set forth in [Supreme Court] cases," *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), or (2), upon "confront[ing] a set of facts that are materially indistinguishable from a decision of th[e] Court[, ... have] arrive[d] at a result different from [its] precedent," *id.* at 406, 120 S.Ct. 1495. Only if the state court's decision was an "objectively unreasonable" application of clearly established Supreme Court precedent do federal courts grant the petition. *Id.* at 409, 120 S.Ct. 1495.

### III. McMahon's Waiver

■ At the preliminary hearing, Judge Berry was in effect participating in plea negotiations between the prosecution and McMahon.[5] In the course of doing so, and in light of his knowledge of the case acquired during the Hall trial, Judge Berry expressed his view that McMahon was likely to be found guilty. McMahon had the right only to either a jury trial over which Judge Berry would preside and a jury would act as the trier of fact, or a bench trial at which Judge Berry would act as the trier of fact. But Judge Berry also offered McMahon a third alternative to which he did not have a right: a bench trial before another judge unacquainted with the facts. In the course of choosing the latter, McMahon waived his right to trial by jury. The question·is whether that waiver was coerced and therefore void under applicable constitutional principles— i.e., whether the Appellate Division's decision to the contrary violated "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1). We conclude that the waiver was not coerced and, therefore, that the Appellate Division decision did not violate clearly established Supreme Court precedent.

■ "[T]he right of the accused to a trial by a constitutional jury [must] be jealously preserved." *Patton v. United States,* 281 U.S. 276, 312, 50 S.Ct. 253, 74 L.Ed. 854 (1930). At the same time, however, "an accused, in the exercise of a free and intelligent choice, and with the considered approval of the court, may waive trial by jury." *Adams v. United States ex rel.*

---

**4.** McMahon argues that the state court erred in its application of law, not its determination of fact. We therefore look only to 28 U.S.C. § 2254(d)(1).

**5.** Although federal judges are prohibited from participating in plea bargaining, *see* Fed. R.Crim.P. 11, this blanket prohibition does not apply to state judges. *See, e.g., Miles v. Dorsey,* 61 F.3d 1459, 1466 (10th Cir.1995) (stating that Rule 11 does not apply to state courts and "does not necessarily establish a constitutional prohibition" (quoting *Frank v. Blackburn,* 646 F.2d 873, 882 (5th Cir.1980), *cert. denied,* 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 123 (1981))) (collecting cases). In New York State courts, a trial judge is permitted to participate in plea negotiations with criminal defendants. *People v. Fontaine,* 28

N.Y.2d 592, 593, 268 N.E.2d 644, 644, 319 N.Y.S.2d 847 (1971); *see also People v. Signo Trading Int'l, Ltd.,* 124 Misc.2d 275, 277, 476 N.Y.S.2d 239, 241 (N.Y.City.1984) ("In the absence of prejudice against or prejudgment of a defendant, there is no reason for a judge [who has participated in plea discussions] to disqualify himself."). While participating in plea negotiations, a judge is permitted to discuss the possible sentencing repercussions of a defendant's choice to go to trial rather than plead guilty. *People v. Zer,* 276 A.D.2d 259, 259, 714 N.Y.S.2d 257, 257 (1st Dep't 2000) ("The court was not acting in a coercive manner when it reminded defendant of the scope of sentencing available in the event of a conviction after trial.").

*McCann,* 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268 (1942). An accused may waive even fundamental rights[6] if the proper safeguards are in place to ensure that the waiver is voluntary and intelligent. *Patton,* 281 U.S. at 312, 50 S.Ct. 253 ("[B]efore any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant."); *see also Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (explaining, in the context of the right to counsel, that for a waiver to be effective, it must be the "intentional relinquishment or abandonment of a known right or privilege").

 The Supreme Court has held that "[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). It does not follow, however, that all inducements for a defendant to plead guilty render either a plea or the consequent waiver of the right to trial by jury involuntary. An otherwise-valid plea agreement in which the accused gives up his or her right to a jury trial is not rendered involuntary by the fact that, for example, it was induced by an appeal to the defendant's desire to limit his or her exposure to penalty. *Parker v. North Carolina,* 397 U.S. 790, 795, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970) ("[A]n otherwise valid plea is not involuntary because induced by the defen-

dant's desire to limit the possible maximum penalty to less than that authorized if there is a jury trial.") (citing *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)).[7]

 The district court, in addressing McMahon's habeas petition, correctly decided that Judge Berry was not required by constitutional principle to recuse himself from presiding at McMahon's trial—he had not evidenced the "deep-seated favoritism or antagonism that would make fair judgment impossible." *McMahon,* 225 F.Supp.2d at 369 (quoting *Liteky,* 510 U.S. at 555, 114 S.Ct. 1147) (internal quotation marks omitted). Although the trial judge had undoubtedly formed opinions about McMahon's likely guilt during the course of Hall's trial at which the judge presided, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of ... prior proceedings[ ] do not constitute a basis for a bias or partiality motion." *Id.* (quoting *Liteky,* 510 U.S. at 555, 114 S.Ct. 1147) (internal quotation marks omitted); *see also Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 821, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) (noting that "only in the most extreme of cases would disqualification on [the] basis [of allegations of bias or prejudice by a judge] be constitutionally required"). As appellate counsel for McMahon conceded, McMahon, therefore, had no right to have a trial—by the bench or by a jury—presided over by a judge other than Judge Berry.

---

6. For instance, it is permissible for a criminal defendant, by entering into a guilty plea, to waive "nearly all of the safeguards that attend prosecution in a criminal trial," *Innes v. Dalsheim,* 864 F.2d 974, 977 (2d Cir.1988), including "[the] right to call witnesses ..., [the] right to confront and cross-examine ... accusers, and [the] right to trial by jury," *id.*

7. Although Justice Brennan's dissent in *Parker* stated that "any surrender of fundamental constitutional rights[ should] reflect the *unfettered* choice of the defendant," *Parker,* 397 U.S. at 801, 90 S.Ct. 1458 (Brennan, J., dissenting) (emphasis added), the Supreme Court has never held that the choice to waive even a fundamental constitutional right must be unfettered. Waiver must be knowing and voluntary—no more.

The district court nevertheless concluded that McMahon "had no meaningful 'choice'" but to waive his right to a jury trial, *McMahon,* 225 F.Supp.2d at 374; that he was "unduly fettered" in making that choice, *id.* at 366; and that he "received no benefit in return" for giving up his right to a jury trial before Judge Berry because he "was already entitled to have both a fair and impartial judge preside over his case and a trial by jury," *id.* at 374. The court premised this conclusion on its view that "the surrender of any fundamental constitutional right must reflect the unfettered choice of the defendant." *Id.* at 372–73 (citing *Parker,* 397 U.S. at 801, 90 S.Ct. 1458 (Brennan, J., dissenting)).

Although it may be said that "McMahon bargained away an important right in return for the granting of his recusal motion," *id.* at 374, a defendant may, consistent with the requirements of the Constitution, bargain away his or her right to a jury trial in order to receive something of value otherwise unavailable to him or her. *See generally Parker,* 397 U.S. 790, 90 S.Ct. 1458. As the district court correctly observed, "[d]efendants often waive their fundamental rights in criminal cases ... [for] tangible benefit[s] that [they] otherwise might not have." *McMahon,* 225 F.Supp.2d at 374.

McMahon wishes us to characterize his waiver of a jury trial before Judge Meehan as having resulted from Judge Berry's coercion. But we do not think that Judge Berry coerced McMahon by offering him a bench trial before another judge, something to which McMahon was not entitled. At the time of his *Sandoval* hearing, McMahon had the right either to a bench trial before Judge Berry, who had permissibly indicated his view of McMahon's likely guilt, or to a jury trial over which Judge Berry would preside but a

jury would act as the trier of fact. At that hearing, however, Judge Berry indicated that if McMahon "wanted to have a non-jury trial" in which a judge who had not been involved in the case would act as trier of fact instead of Judge Berry, Judge Berry would "arrange" that. *Sandoval* Hearing, June 11, 1996, at 32–33. McMahon was not being coerced into giving up his right to a trial by jury; he was being offered something to which he had no right: a bench trial before a judge who, at the time of trial, was unfamiliar with the facts of the case. His right to a jury trial was not thereby abridged.

We conclude that the Appellate Division's decision in McMahon's case was not "contrary to, [and did not] involve[ ] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). We therefore reverse the judgment of the district court granting McMahon's application for a writ of habeas corpus based on his waiver of trial by jury.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is reversed.