FILED
United States Court of Appeals
Tenth Circuit

March 14, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LANCEY DARNELL RAY,

     Petitioner-Appellant,

v.

TRACY MCCOLLUM, Warden,

     Respondent-Appellee.

No. 17-6117
(D.C. No. 5:15-CV-00306-R)
(W.D. Okla.)

_____

**ORDER**
_____

Before **LUCERO**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

Mr. Lancey Ray, an Oklahoma prisoner appearing pro se, unsuccessfully sought federal habeas relief in district court and wants to appeal. To appeal, however, he needs a certificate of appealability. *Clark v. Oklahoma*, 468 F.3d 711, 713 (10th Cir. 2006). He applied for this certificate and moved to supplement his brief. We will allow the supplementation but decline to issue a certificate of appealability.

**I.     Background**

Mr. Ray was convicted of first-degree child-abuse murder in Comanche County, Oklahoma. Okla. Stat. tit. 21, § 701.7(C). His stepson, ten-year old Malik Ray, died after being hit by both his mother and Mr.

Ray. The mother used a board, and Mr. Ray used a belt. Mr. Ray denies that his actions caused the death.

## II.     Standard of Review

A certificate of appealability is appropriate only if one or more of Mr. Ray's appeal points is reasonably debatable. *United States v. Springer*, 875 F.3d 968, 981 (10th Cir. 2017). To decide whether an appeal point is reasonably debatable, we consider the standard for habeas relief. *See Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004) (holding that the "[Antiterrorism and Effective Death Penalty Act]'s deferential treatment of state court decisions must be incorporated into our consideration of a habeas petitioner's request for [a certificate of appealability]").

When the state appeals court has decided the merits, the federal district court can grant habeas relief only if the petitioner shows that the state-court adjudication of his claim was

- "contrary to" or "involved an unreasonable application of" federal law, 28 U.S.C. § 2254(d)(1), or

- "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2).

## III.   Ineffective Assistance of Appellate Counsel

Mr. Ray claims that his attorneys on direct appeal were constitutionally ineffective. These claims are not reasonably debatable.

## A. Mr. Ray's Arguments

For appellate counsel, Mr. Ray alleges failure

* to argue that photographs offered at trial had been unfairly prejudicial,

* to present evidence that some of Malik's conditions had resulted from infusions of saline and blood rather than abuse, and

* to argue that Malik's treating physician had misidentified Malik's cardiovascular shock.

## B. The Applicable Standard

For the claims of ineffective assistance on appeal, Mr. Ray must show that his appellate attorneys' performance had been objectively unreasonable and prejudicial. *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003). The alleged deficiencies were prejudicial only if better representation would have created a reasonable probability of a different outcome in the direct appeal. *Id*.

## C. The State Appeals Court's Consideration of these Claims

In the post-conviction appeal, the state appellate court rejected the claims involving appellate counsel, reasoning that the omitted arguments would not have been meritorious. Order Affirming Denial of Post-Conviction Relief at 4, *Ray v. State*, No. PC 2014-1053 (Okla. Crim. App. Mar. 18, 2015). This decision was on the merits even in the absence of elaboration. *See Black v. Workman*, 682 F.3d 880, 892 (10th Cir. 2012) ("When the state court does not explain its reasoning, the [petitioner] must

3

still show that 'there was no reasonable basis for the state court to deny relief.'" (quoting *Harrington v. Richter*, 562 U.S. 86, 98 (2011)))[1]

**D.    Merits**

The state appeals court rejected the claims of ineffective assistance of appellate counsel, and this decision did not unreasonably apply clearly established federal law or unreasonably find facts from the evidence presented.

**1.    Photographs**

Mr. Ray contends that his appellate counsel was deficient in failing to challenge the introduction of photographs. This contention is facially invalid because Mr. Ray's appellate counsel *did* challenge the conviction based on introduction of the photographs.[2] Mr. Ray has not shown any

---

[1]    Mr. Ray argues that the state district judge failed to consider the merits of the ineffective-assistance claims. This argument is irrelevant because we consider only the highest state court's adjudication of the merits. *See Greene v. Fisher*, 565 U.S. 34, 39-40 (2011).

[2]    In the direct appeal, Mr. Ray's counsel challenged introduction of the photographs and the state appeals court rejected this challenge, stating:

> As to Proposition 2, the trial court did not abuse its discretion in admitting several post-mortem photographs which depicted the numerous injuries the child victim had sustained. These photographs were relevant to corroborate and illustrate the testimony of the forensic pathologist and other medical witnesses, and they were not misleading. The jury was made well aware, throughout the trial, that the bruising depicted in the photographs was more pronounced than what medical personnel observed when the child was first admitted to the

reason to believe that the outcome would have been different with a better appellate challenge to the photographs.

### 2. Blood and Saline Infusions

In alleging ineffective assistance of appellate counsel, Mr. Ray also challenges the State's evidence regarding Malik's hemorrhaging of soft tissue during his treatment. This challenge is difficult to understand because Mr. Ray does not state what appellate counsel should have done differently. Because Mr. Ray is pro se, however, we will liberally construe his appellate brief on this issue.

Mr. Ray cites pages 42, 43, and 58 of Volume III of the trial transcript. There Dr. Yacoub, the forensic pathologist, testified that Malik's soft tissue had diffuse hemorrhaging. Dr. Yacoub elsewhere attributed this hemorrhaging to trauma. Trial Tr., vol. III at 61. Mr. Ray argues that Dr. Yacoub is wrong because the diffuse hemorrhaging had resulted from the infusion of too much saline and blood rather than trauma. At trial, Dr. Theodore Ware, who treated Malik in the emergency room,

---

hospital. Appellant's argument is based on the faulty presumption that depictions of injuries become less probative as the body's natural reaction to them manifests itself. The countless bruises on the victim's body – and the fact that they appeared darker the day after they were inflicted – were direct results of the unreasonable force inflicted on the child.

*Ray v. State*, No. F-2012-538, slip. op. at 2-3 (Okla. Crim. App. Sept. 24, 2013) (unpublished).

5

testified that the medical staff had given Malik saline and blood in a desperate effort to save his life. Trial Tr., vol. I at 247-49.

With regard to the infusions, we cannot discern what Mr. Ray's appellate counsel should have done differently. Obviously it would have been futile for the appellate counsel to inject her own "medical" opinion disputing the medical opinions of the State's expert witnesses.

Nor do we see why the cause of the hemorrhaging would have mattered on appeal. At trial, Mr. Ray's theory was that his wife had inflicted the fatal injuries. But Mr. Ray did not question the fact that someone had inflicted the physical injuries that ultimately led to Malik's death. For example, Mr. Ray's trial counsel argued: "We're not alleging that [Malik] wasn't grievously injured by someone. We're not alleging that he didn't die from these injuries." Trial Tr., vol. III at 82. And, as discussed below, whoever struck the fatal blows would have been criminally responsible for Malik's death even if his death had been hastened by the infusion of too much saline and blood. *See* Part IV(C), below. As a result, the absence of prejudice would stymie Mr. Ray's challenge to appellate counsel's handling of the issue.[3]

---

[3] In the body of his appellate brief, Mr. Ray also argues that Dr. Yacoub should not have been allowed to offer expert testimony because he admitted that he had not known the volume of fluids administered to Malik. Appellant's Opening Br. at 20-21 (quoting Trial Tr., vol. III at 72). This testimony came at the end of the cross-examination of Dr. Yacoub. Trial

6

### 3.    Cyanosis

In federal district court, Mr. Ray also focused on appellate counsel's failure to show that Malik's skin condition had reflected cyanosis from aspiration. When Malik was hospitalized, the emergency-room report noted

- cyanosis of the skin and

- bruises covering Malik in various stages of healing.

The emergency-room report shows diagnoses of child abuse, respiratory failure, and hypothermia.

Again, Mr. Ray does not identify what his appellate counsel should have done differently. Even with a liberal construction of Mr. Ray's appeal brief, we do not see how the reference to cyanosis would suggest any deficiencies in appellate counsel's performance. The skin continued to turn bluish when Malik died. But the jury knew about this discoloration, for the treating physicians acknowledged in their testimony that the photographs depicted greater discoloration than what had been observed in the hospital.

---

Tr., vol. III at 71-72. And trial counsel did not challenge the admissibility of Dr. Yacoub's opinion testimony. In the absence of a trial objection, appellate counsel would have had to show plain error in the introduction of Dr. Yacoub's opinion testimony. *Lewis v. State*, 970 P.2d 1158, 1166 (Okla. Crim. App. 1998). No reasonable jurist could surmise that appellate counsel could have shown plain error in the introduction of this testimony. As a result, this theory of ineffective assistance on appeal would have foundered for lack of prejudice. *See* Wayne R. LaFave, Jerold H. Israel, & Nancy J. King, *Criminal Procedure* § 11.10(d) & n.143 (2d ed. 1999 & 2004 Supp.) ("[C]ourts have noted that the prejudice element of *Strickland* may be more readily satisfied than the . . . [comparable] component of the plain error standard.").

7

As a result, this appeal point would strike any reasonable jurist as groundless.

### 4.    Shock

Mr. Ray also argues that his appellate counsel should have argued that Malik's treating physician had misidentified the type of shock that Malik had experienced. Mr. Ray has not explained why the misidentification would matter. For example, he does not say whether Mr. Ray's abuse could only cause one type of shock or if it matters for some other reason. In the absence of any reason to think that Mr. Ray's direct appeal might have been decided differently, we reject Mr. Ray's theory of ineffective assistance involving misidentification of Malik's shock.

* * *

In these circumstances, we conclude that no jurist could reasonably question the state appellate court's rejection of Mr. Ray's claims of ineffective assistance of appellate counsel.

## IV. Ineffective Assistance of Trial Counsel

Mr. Ray also alleges that his trial counsel was ineffective.

### A.    Undeveloped Arguments

Without explanation or support, Mr. Ray asks for a certificate of appealability on trial counsel's ineffective assistance in failing to

- dispute the legal sufficiency of the medical examiner's opinion,

- present the facts regarding a violation of *Brady v. Maryland*, 373 U.S. 83 (1963),

- object to a variance, and

- object to a jury instruction on a lesser-included offense.[4]

Without any development of these appeal points, we decline to issue a certificate of appealability. *See Fairchild v. Trammell*, 784 F.3d 702, 724 (10th Cir. 2015); *see also Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (rejecting an argument included in an opening brief by a pro se appellant because "'[w]e do not consider merely including an issue within a list to be adequate briefing'" (quoting *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1175 (10th Cir. 2002))).

## B.     Photographs, Cyanosis, and Blood Infusions

In federal district court, Mr. Ray also claimed that his trial counsel had been ineffective in failing

---

[4]     Mr. Ray is ambiguous about whether he actually seeks a certificate of appealability on these points. On page 7, he says that he wants to appeal "Grounds/Propositions I, V/VII, X and XI." Appellant's Opening Br. at 7. Ground X, provided on page 10, lists these points. But on page 13, Mr. Ray says that he wants to combine those points into a "single Ground 11 standing alone" on ineffective assistance of trial counsel. Liberally construing the pro se application for a certificate of appealability, we conclude that Mr. Ray's submission of Ground 11 was not meant to preclude consideration of his other arguments.

- to correctly challenge introduction of the photographs and

- to explain the distortions caused by cyanosis and blood infusions.

Mr. Ray's argument is contradicted by the state-court record. For example, Mr. Ray admits that his trial attorney had objected to all of the State's photographs. And, as the Oklahoma Court of Criminal Appeals explained, Mr. Ray's trial counsel elicited acknowledgments throughout the trial that the bruising depicted in the photographs was more pronounced than what medical personnel had observed. *Ray v. State*, No. F-2012-538, slip. op. at 2-3 (Okla. Crim. App. Sept. 24, 2013) (unpublished); *see* note 2, above.

Mr. Ray insists that his trial counsel should have pointed out that cyanosis was not indicative of unreasonable force. Appellant's Opening Br. at 31. In district court and in our court, Mr. Ray relies solely on his own "medical opinion" that cyanosis can cause discoloration of the skin. In our view, however, no reasonable jurist could have expected exclusion of the photographs with the addition of Mr. Ray's explanation for the discoloration of Malik's skin.[5]

---

[5] In a single phrase, Mr. Ray asserts that his trial counsel failed to consult with experts to testify about the effect of skin cyanosis. Appellant's Opening Br. at 32. But Mr. Ray does not

- say whether he ever presented this allegation to the district court or

- present evidentiary support for his assertion.

10

## C. Blood Loss

According to Mr. Ray, his trial counsel was ineffective for failing to rebut the State's claim of blood loss in the tissues. Here, Mr. Ray apparently refers to his own lay medical opinion. His trial counsel took a similar approach, intensively challenging the State's expert witnesses about why Malik had lost so much blood.

Mr. Ray alleges that this strategy was not ideal and that his attorney should have presented evidence of diffuse soft tissue edema to explain the blood loss in tissues. Again, Mr. Ray relies on his own lay diagnosis of diffuse soft tissue edema. He states that he supplied his trial attorney with over 80 pages of supporting correspondence but declines to furnish us with this correspondence, tell us what it comprised, or furnish us with anything other than his own lay opinion.

Nor does Mr. Ray explain why the cause of the blood loss would have mattered. According to Mr. Ray, the blood loss resulted from the infusions administered to Malik. Even if the infusions had contributed to the blood loss, the infusions had themselves resulted from Malik's physical condition after being hit by Mr. Ray. For criminal homicide in Oklahoma, the defendant is criminally responsible whenever his or her conduct "was a

This assertion is not adequately developed for meaningful review. *See* p. 9, above.

11

substantial factor in bringing about the victim's death." *State v. Caesar*, 237 P.3d 792, 794-95 (Okla. Crim. App. 2010). Thus, Mr. Ray fails to provide a plausible theory of prejudice from trial counsel's allegedly subpar challenge to the State's explanation for Malik's blood loss.

## V.     Failure to Satisfy State Procedural Requirements in Ruling on the Post-Conviction Application

Oklahoma law establishes certain requirements for state district courts when ruling on a post-conviction application. Okla. Stat. tit. 22, §§ 1083-84. These requirements address the necessity of findings, conclusions, and evidentiary hearings. In light of these requirements, Mr. Ray contends that the state district court should have granted an evidentiary hearing on some of the claims.

Even if Mr. Ray were right, a violation of state post-conviction requirements would not justify habeas relief. *See Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) ("Steele's claim challenging the Oklahoma post-conviction procedures on their face and as applied to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding."); *Hopkinson v. Shillinger*, 866 F.2d 1185, 1219 (10th Cir. 1989) (holding that a procedural error in carrying out state post-conviction procedures would "not rise to the level of a federal constitutional claim recognizable in habeas corpus proceedings"), *overruled on other grounds as stated in Phillips v. Ferguson*, 182 F.3d 769, 772-73 (10th Cir. 1999).

Thus, we have declined to issue certificates of appealability for similar challenges based on a failure to comply with state procedural requirements in post-conviction proceedings. *See Shipley v. Oklahoma*, 313 F.3d 1249, 1251 (10th Cir. 2002) (conclusions of law); *Davis v. Beck*, 151 F. App'x 707, 709 (10th Cir. 2005) (unpublished) (findings of fact and conclusions of law). We do the same here and decline to issue a certificate of appealability on the challenges to rulings in Mr. Ray's state post-conviction proceedings.

## VI. Failure to Instruct the Jury on Definitions of "Malicious" and "Unreasonable Force"

Mr. Ray alleges a failure to instruct the jury on the meaning of the terms "malicious" and "unreasonable force."

Mr. Ray invokes plain-error review because his trial counsel failed to object to the missing instructions. According to Mr. Ray, his counsel did not "affirmatively waive[]" the missing jury instructions. Appellant's Mot. to Supplement at 4; *see United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007) ("'[A] party that has *forfeited* a right by failing to make a proper objection may obtain relief for plain error; but a party that has *waived* a right is not entitled to appellate relief.'" (emphasis in original) (quoting *United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir. 2006))). But even if Mr. Ray did not waive the claims, he would still need to show exhaustion of the claims in state court and their presentation in

13

federal district court. *See* 28 U.S.C. § 2254(b)(1)(A) (exhaustion); *Chase v. Crisp*, 523 F.2d 595, 597 (10th Cir. 1975) (presentation in federal district court).

Mr. Ray did not raise this claim in the state appeals court or the federal district court,[6] and his arguments for plain error do not overcome these procedural deficits. There are some situations where a habeas petitioner's failure to exhaust claims in state court is excused, including where a petitioner makes "a credible showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). In a few places, Mr. Ray proclaims that he is "actually innocent." Appellant's Mot. to Supplement at 20. But "[t]o make a credible showing of actual innocence, a 'petitioner must support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial.'" *Frost v. Pryor*, 749 F.3d 1212, 1231-32 (10th Cir. 2014) (quoting *Cummings v. Sirmons*, 506 F.3d 1211, 1223 (10th Cir. 2007)). Mr. Ray has not supported his assertion of

---

[6] Mr. Ray's arguments on the missing jury instructions cannot be exhausted in state court now because they had not been raised in the state petition for post-conviction relief. *See* Okla. Stat. tit. 22, § 1086 ("All grounds for relief available to a [post-conviction petitioner] . . . must be raised in his original, supplemental or amended application."). Mr. Ray's arguments are thus subject to an anticipatory procedural bar. *See Thacker v. Workman*, 678 F.3d 820, 841 (10th Cir. 2012).

14

actual innocence with evidence omitted at his trial, so he could not overcome the defense of exhaustion even in the absence of forfeiture.[7]

## VII.  Request for Reclassification

Mr. Ray asks that we "reclassify" his first-degree-murder conviction because the jury instructions and the evidence supported only second-degree manslaughter. This argument was not raised in state court or in federal district court. Mr. Ray again cannot overcome the defenses of exhaustion and forfeiture.

But his argument is also legally incorrect. Mr. Ray focuses on the fact that the jury was only instructed on the meaning of the word "willful" rather than the word "malicious." The underlying statute does contain both words, but they are separated by a disjunctive: "A person commits murder in the first degree when the death of a child results from the willful *or* malicious injuring . . . ." Okla. Stat. tit. 21, § 701.7(C) (emphasis added). The jury did not need a definition of "malicious" to find Mr. Ray guilty because the statute makes "willful" conduct sufficient for conviction of first-degree murder when the conduct results in the death of a child.

---

[7]     Mr. Ray also argues that (1) his trial counsel was ineffective for failing to seek the instructions and (2) his appellate counsel was ineffective for failing to raise this argument on direct appeal. These arguments are also subject to the defenses of exhaustion and forfeiture.

15

Because Mr. Ray's appellate argument is procedurally and substantively meritless, we decline to issue a certificate of appealability on this issue.

## VIII. Denial of the Right to an Impartial Jury

Mr. Ray makes two arguments regarding the denial of an impartial jury. The first argument is that one juror knew a prosecution witness and had been familiar with the case prior to the trial. The second argument is that the jury was tainted by media coverage.

Mr. Ray raised the first argument on direct appeal, and the Oklahoma Court of Criminal Appeals rejected the argument on the merits. The juror "assured the trial court that he could be fair and impartial, and the record" gave the court "no reason to doubt that assessment." *Ray v. State*, No. F-2012-538, slip op. at 2 (Okla. Crim. App. Sept. 24, 2013) (unpublished). Thus, the court concluded that it had no reason to regard the juror as biased. *Id*. at 2 n.2. The state court's determination did not involve an unreasonable factual determination or application of Supreme Court precedent, for Mr. Ray has not provided any reason to question the juror's assurances of impartiality.

Mr. Ray failed to present his argument about media coverage in state court or in federal district court. Consequently, this argument is procedurally deficient and subject to an anticipatory procedural bar. *See* note 6, above.

16

This argument is also legally deficient. Mr. Ray cites three opinions to support his claim. One opinion, *Nebraska Press Association v. Stuart*, addresses the First Amendment prior-restraint doctrine and does not support Mr. Ray's habeas claim. 427 U.S. 539, 541 (1976). Indeed, the Supreme Court held that the prior restraint had not been justified in part because "adverse publicity does not inevitably lead to an unfair trial." *Id*. at 554.

The other two opinions found actual or possible prejudice to criminal defendants on the basis of media coverage, but both cases contained evidence of prejudice. *See Irvin v. Dowd*, 366 U.S. 717, 725-28 (1961) (describing "clear and convincing" evidence of community prejudice against the defendant, including the fact that two-thirds of the jurors had thought before the trial that the petitioner was guilty); *United States v. Davis*, 60 F.3d 1479, 1482 (10th Cir. 1995) (noting that the defendant submitted an affidavit of a jury consultant based on post-verdict juror interviews showing that jurors had watched television during the trial). Here, however, Mr. Ray does not present any evidence of a taint on the jury from the news coverage. As a result, Mr. Ray's claim is not reasonably debatable.

## IX. Sufficiency of the Evidence

Mr. Ray's opening brief presents a request for a certificate of appealability on the ground that his conviction was not supported by

sufficient evidence. Mr. Ray argues that the medical examiner's opinion testimony was inadmissible under the state and federal evidentiary rules. Mr. Ray's brief also combines this ground with others as part of his request for a certificate of appealability on his ineffective-assistance claims. Mr. Ray does not develop the standalone sufficiency claim, so we reject it. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005); *see also* p. 9, above (discussing the failure to develop another appellate argument).

## X.    Conclusion

Mr. Ray's ineffective-assistance claims clearly fail because he does not show prejudice from his counsel's allegedly deficient performance. His other claims are also facially invalid or undeveloped. Thus, we deny Mr. Ray's request for a certificate of appealability and dismiss the appeal.[8]

Entered for the Court

Robert E. Bacharach
Circuit Judge

---

[8]    Mr. Ray's motion to proceed in forma pauperis is granted.